1  MARK D. BRUTZKUS - Bar No. 128102
2  MICHAEL A. BERNET - Bar No. 306657
3  BRUTZKUS GUBNER
   21650 Oxnard Street, Suite 500
4  Woodland Hills, CA 91367
   Telephone:       (818) 827-9000
5  Facsimile:       (818) 827-9099
6  Email:           mbrutzkus@bg.law
                    mbernet@bg.law
7
8  HARLAN M. LAZARUS (Admitted Pro Hac Vice)
9  LAZARUS & LAZARUS P.C.
   240 Madison Avenue, 8th Floor
10 New York, NY 10016
   Telephone:  (212) 889-7400
11 Email:         hlazarus@lazarusandlazarus.com
12
13 Attorneys for Defendant/Counterclaimant, **DIGITAL GADGETS, LLC**

14               **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16
17 | Interworks Unlimited, Inc., a California corporation, | ) | **Case No. 2:17-cv-4983 TJH KSx)** |
18 |   | ) | |
   | Plaintiff, | ) | **DECLARATION OF CHARLES** |
19 | v. | ) | **TEBELE IN OPPOSITION TO** |
   |   | ) | **PLAINTIFF'S MOTION FOR** |
20 | Digital Gadgets, LLC., a New Jersey limited liability company, | ) | **SUMMARY JUDGMENT** |
21 |   | ) | |
   |   | ) | |
22 | Defendant. | ) | Date: January 7, 2019 |
   | _____ | ) | |
23 | Digital Gadgets, LLC., a New Jersey limited | ) | Time: Under Submission |
24 | liability company, | ) | Courtroom: 9B |
   |   | ) | |
25 | Counterclaimant, | ) | |
26 | v. | ) | |
   |   | ) | |
27 | Interworks Unlimited, Inc., a California corporation, | ) | |
28 |   | ) | |
   | Counter-defendant | ) | |
   | _____ | | |

1. I am an authorized representative of Defendant Digital Gadgets, LLC ("Defendant") and am authorized to make this declaration on its behalf. I have personal knowledge of each of the facts set forth in this Declaration, and can testify competently thereto, except as to the matters stated on information and belief, and as to such matters I believe them to be true.

2. I am also a custodian of records of Defendant and am authorized to authenticate the exhibits stated below. These exhibits contain information compiled, prepared or received by qualified personnel of Defendant in the course of regularly conducted business activities, were made at or near the time of the occurrence of the matters set forth by a person with knowledge of those matters, pursuant to a business duty to keep accurate and complete records, are made and kept in the course of the regularly-conducted business activities, and were made and kept by the regularly conducted business activities as a regular practice.

3. Defendant is in the business of selling electronic goods.

4. In or around December of 2016, Defendant began having conversations with Plaintiff, Interworks Unlimited, Inc. ("Plaintiff") concerning the purchase and resale of hoverboards by Defendant to QVC, Inc. ("QVC") and Zulily, Inc ("Zulily").

5. Plaintiff told Defendant that it was the exclusive distributor of hoverboards through the manufacturer, Hangzhou Chic Intelligent Technology Co., Ltd ("CHIC").

6. Plaintiff also told Defendant that while it had previously sold a number of hoverboards to QVC, Plaintiff could not meet QVC's new requirements of shipping the boards directly to QVC's customer, as opposed to shipping to QVC's warehouse (the process of shipping goods directly to QVC's customers is known as "drop shipping").

7. Plaintiff had also told Defendant that QVC had canceled multiple orders with Plaintiff because of Plaintiff's inability to drop ship the goods to QVC's customers.

8. Defendant had the resources and previous approval of QVC to drop ship goods directly to QVC's customers.

9. As such, Plaintiff and Defendant entered into an agreement whereby Defendant would fill Plaintiff's shoes as the exclusive seller of hoverboards and drop ship the hoverboards to QVC's customer.

10. As exclusive seller, Defendant would also fulfill the demand associated with the previous orders that QVC had canceled with Plaintiff.

11. In or around December of 2016, Defendant placed its first order with Plaintiff for 4,800 hoverboards.

12. The hoverboards were delivered to Defendant between December 9, 2016 and December 15, 2016. *See* First Order Bill of Lading, annexed to Defendant's Exhibits and Evidence in Opposition to Plaintiff's Motion for Summary Judgment ("DE") as Exhibit 22.

13. On or about December 23, 2016, Defendant placed a second order with Plaintiff for 6,000 hoverboards. *See* Second Order Purchase Order, DE, Exhibit 23.

14. Of the 6,000 hoverboards, Plaintiff delivered a total of 5,808 hoverboards between December 28, 2016 and January 4, 2017. *See* Second Order Bill of Lading, DE, Exhibit 24.

15. In order to sell goods to QVC, one is required to submit a sample of the product for quality assurance testing.

16. It was warranted and represented by Plaintiff that Plaintiff had previously obtained approval for the hoverboards from QVC's quality assurance ("QA") department and that QVC had assigned the hoverboards with a Stock Keeping Unit ("SKU") number of T34604.

17. On or about December 13, 2016, Defendant requested QVC QA's permission to sell the hoverboards to QVC's customers.

18. Given that Defendant had a previous relationship with QVC, that Plaintiff had previously obtained approval from QVC for the hoverboards, and

Defendant was to sell the same exact hoverboard, QVC transferred the results of T34604 and approved Defendant's request without any documentation or sample testing. *See* T34764 QVC Quality Assurance Report, DE, Exhibit 9.

19. QVC had assigned Defendant with a SKU number of T34764.

20. Defendant sold the hoverboards to QVC's customers without any issues through March of 2017.

21. In or around April of 2017, QVC decided to change the program associated with the hoverboards. As a result, Defendant was required to resubmit the hoverboard for QA approval under SKU number T35011.

22. While the QA department had previously allowed Defendant to transfer the results from T34604 to T34764 without submitting any documentation, QA now required Defendant to submit certain documentation in order to obtain approval for T35011.

23. As part of the process, Defendant was required to submit a lithium battery information form ("battery form") which provided to QVC, among other things, the manufacturer and part number of the battery included in the hoverboard.

24. It was during this process that Defendant discovered that the hoverboards delivered to Defendant were different than those previously submitted by Plaintiff to QVC.

25. On April 18, 2017, Defendant made Plaintiff aware that QVC was requesting the battery form again and asked Plaintiff to provide a copy of the battery form it previously submitted to QVC for T34604. *See* Correspondence between Defendant and Plaintiff, DE, Exhibit 8, p. 116.

26. On April 20, 2017, Plaintiff sent Defendant the battery form (*See id.*, p. 115), and in turn Defendant submitted the same to QVC on May 1, 2017 (*See* T35011 First QVC QA Report, DE, **Exhibit 19**).

27. On May 1, 2017, QVC rejected the submission as the battery part number on the battery form did not match the battery part number previously provided to QVC. (*See* T35011 First QVC QA Report, DE, **Exhibit 19**).

28. On May 2, 2017, Defendant made Plaintiff aware that the battery information on the battery form did not match the information previously provided to QVC. *See* Correspondence between Defendant and Plaintiff, DE, **Exhibit 8**, pp. 113-114.

29. On May 4, 2017, Plaintiff provided Defendant with a second battery form. *Id.*, p. 113.

30. On May 9, 2017, Defendant informed Plaintiff that the second battery form was rejected by QVC because it did not match the information previously provided for T34604. *Id.*, p. 112.

31. Moreover, on May 9, 2017, Defendant informed Plaintiff that it had opened a hoverboard to review its contents and discovered that the battery inside did not match any of the forms that had been previously provided by Plaintiff. *Id.*

32. On May 15, 2017, Defendant informed Plaintiff that QVC was treating T35011 as a new submission and that it would be required to submit a new sample for testing in addition to the aforementioned documentation. *See* Email Correspondence from Chris Mitchell to Eric Lu, May 15, 2017, DE, **Exhibit 13**.

33. On June 1, 2017, QVC again informed Defendant that the battery part number and battery manufacturer on the battery form submitted for T35011, did not match the information provided by Plaintiff for T34604. QVC again informed Defendant that if the battery in the hoverboard changed, QVC would not be able transfer the approval from T34604 to T35011.

34. On June 6, 2017, Defendant again informed Plaintiff that the battery inside the hoverboards did not match the information previously provided by

Plaintiff to QVC. *See* Correspondence between Defendant and Plaintiff, DE, Exhibit 14, p. 173.

35. On or about June 6, 2017, Defendant resubmitted T35011 as a new submission and with a new sample. *See* Second T35011 QVC QA Report, DE, Exhibit 20.

36. On or about June 15, 2017, Defendant discovered that there were additional issues with the hoverboard that did not conform with the information provided by Plaintiff for T34604. *See id.*

37. More specifically, QVC rejected T35011 because: 1) the warranty card did not meet QVC requirements; and 2) the plastic bag (the "poly bag") which the hoverboard was shipped in was too thin. *See id.*

38. QVC also rejected T35011 because it needed more information concerning the battery. *See id.*

39. On June 19, 2017, Defendant made Plaintiff aware of these issues and asked for guidance on how to proceed. *See* Correspondence between Defendant and Plaintiff, DE, Exhibit 21.

40. On June 30, 2017, QVC advised Defendant that it had reached out to Plaintiff to obtain some of this information, but Plaintiff refused to provide the same due to an outstanding invoice. *See* Email Correspondence between QVC and Defendant, dated June 30, 2017, DE, Exhibit 15.

41. Contrary to Plaintiff's Exhibit 17, in or around June of 2017, when Defendant was provided notice by QVC that the battery did not match what was previously submitted by Plaintiff, Defendant stopped selling the hoverboards. To the extent Plaintiff relies on Plaintiff's Exhibit 17 in support of its claims against Defendant, issues of fact arise. I deny the sale of the batteries with the incorrect battery.

42. Because Plaintiff delivered to Defendant a hoverboard different than what was submitted and approved by QVC for T34604, Defendant was unable to continue the sale of the hoverboards under T35011 and was unable to fulfill the demand associated with the orders previously canceled by QVC under T34604.

43. Defendant estimates its loss of sales to be approximately $1,164,700.00 plus costs. *See* Spreadsheet produced by QVC showing sales of hoverboards, DE, **Exhibit 18.**

44. Additionally, Defendant is entitled to damages for the delivery of nonconforming goods pursuant to its purchase order. *See* Second Order Purchase Order, **Exhibit 23**.

45. As of today, approximately 94% of the CHIC hoverboards in Defendant's possession contain batteries different than those submitted by Plaintiff to QVC for T34604.

1    I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct. Executed on *December 10, 2018*

3

4

5    _____

6                                Charles Tebele
                                 Declarant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28