MARK D. BRUTZKUS - Bar No. 128102
MICHAEL A. BERNET - Bar No. 306657
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: mbrutzkus@bg.law
mbernet@bg.law

HARLAN M. LAZARUS *(Admitted Pro Hac Vice)*
LAZARUS & LAZARUS P.C.
240 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 889-7400
Email: hlazarus@lazarusandlazarus.com

Attorneys for Defendant/Counterclaimant, **DIGITAL GADGETS, LLC**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Interworks Unlimited, Inc., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Digital Gadgets, LLC., a New Jersey limited liability company,<br><br>    Defendant. | Case No. **2:17-cv-4983 TJH KSx)**<br><br>**DEFENDANT/COUNTERCLAIMANT'S RESPONSE TO PLAINTIFF'S INTERWORKS UNLIMITED INC.'S STATEMENT OF UNCONTROVERTED FACTS**<br><br>Date: January 7, 2019<br>Time: Under Submission<br>Courtroom: 9B |
| Digital Gadgets, LLC, a New Jersey limited liability company,<br><br>    Counterclaimant,<br><br>v.<br><br>Interworks Unlimited, Inc., a California corporation,<br><br>    Counter-defendant. | |

1

**DEFENDANT/COUNTERCLAIMANT'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS**

2044197

Defendant submits the following Response to Plaintiff's Statement of Uncontroverted Facts:

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 1. Plaintiff is a distributor of electronic goods. | Undisputed for the purposes of this motion. |
| 2. Plaintiff was the exclusive U.S. distributor of hoverboards manufactured by the Chinese company, Hangzhou Chic Intelligent Technology Co., Ltd. including the hoverboard entitled "Chic High Roller Self Balancing Hoverboard, Model C" ("Model C"). | Undisputed for the purposes of this motion. |
| 3. In late 2016, Plaintiff started to sell Model C's to QVC, Inc. ("QVC"). | Undisputed for the purposes of this motion. |
| 4. Prior to selling the Model C's, the Plaintiff submitted the hoverboards to QVC for quality testing. The Model C's subsequently passed QVC's quality testing. | Undisputed for the purposes of this motion. |
| 5. Meghan Kane is QVC's current account manager for performance marketing and was designated by QVC as the person most knowledgeable concerning QVC's purchase of hoverboards from Plaintiff and Defendant. | Undisputed for the purposes of this motion. |

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 6. Rafiq Zabrani is QVC's current Global Product Development Lead and was designated by QVC as the person most knowledgeable regarding specifications and testing of the hoverboards. | Undisputed for the purposes of this motion. |
| 7. Two people that Defendant designated as having knowledge of this case were Gillian Yip and Charles Tebele. | Undisputed for the purposes of this motion. |
| 8. The Model C's were assigned by QVC with a Stock Keeping Unit ("SKU") number of T34604. | Undisputed for the purposes of this motion, except it was the hoverboards sold by Plaintiff to QVC, Inc. that were given the SKU of T34604. |
| 9. The Model C's were designated as warehouse item. That means, after a consumer purchased the hoverboards, the Plaintiff would deliver the product to QVC, who would deliver the product to the customer. | Undisputed for the purposes of this motion. |
| 10. For a drop ship item, as opposed to a warehouse item, QVC continues to sell a vendor's products; however, the vendor is not required to deliver the products to QVC, and QVC does not deliver to the consumer. Rather, a vendor delivers the products directly to the purchasing customer. | Undisputed for the purposes of this motion. |

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 11. As the holiday season approached, QVC desired to purchase more Model C's from Plaintiff, and was interested in purchasing the hoverboards on a "drop-ship" basis. But the Plaintiff did not have the ability to "drop ship" the hoverboards to QVC's customers. | Undisputed for the purposes of this motion. |
| 12. In or about December of 2016, the Plaintiff decided to enter into an arrangement with the Defendant who said they had the ability to drop ship with QVC. | Undisputed for the purposes of this motion including that Defendant would fill the shoes of Plaintiff as the exclusive seller of the hoverboards. |
| 13. In that arrangement, the Defendant would purchase the Model C's from the Plaintiff. QVC's customer would then purchase the boards from QVC and then the Defendant would ship the boards directly to QVC's customer. The two individuals Plaintiff spoke to primarily for the Defendant were Chris Mitchell and Charles Tebele. The Plaintiff and Defendant understood that Defendant was purchasing the same exact units that Plaintiff had been selling through QVC. | Undisputed for the purposes of this motion including that Defendant would fill the shoes of Plaintiff as the exclusive seller of the hoverboards. |
| 14. On or about December 9, 2016, Defendant placed an order with the Plaintiff for 4800 Model C's of varying colors. | Undisputed for the purposes of this motion. |

4

**DEFENDANT/COUNTERCLAIMANT'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS**

2044197

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 15.   The hoverboards were priced at $190.00 per hoverboard for a total of $912,000.00. The terms of the purchase was Net 60 Days. | Undisputed for the purposes of this motion. |
| 16.   The hoverboards were shipped to the Defendant in 8 separate shipments. | Undisputed for the purposes of this motion. |
| 17.   Per Defendant's instructions, Plaintiff shipped the hoverboards to Phoenix Warehouse in the City of Santa Fe Springs, who was providing the Defendant warehousing services. | Undisputed for the purposes of this motion. |
| 18.   After the hoverboards were shipped, the Plaintiff gave the Defendant a requested discount of $30 on 1,613 of those 4800 hoverboards for a total discount of $48,390.00. | Undisputed for the purposes of this motion. |
| 19.   On or about December 23, 2016, the Defendant placed another order for another 6000 "Model C" hoverboards of varying colors for $215.00 each. As with the first purchase, the payment terms were Net 60 Days. | Undisputed for the purposes of this motion. |
| 20.   The Plaintiff then agreed to provide the Defendant with another discount of $55.00 per hoverboard. | Undisputed for the purposes of this motion. |

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 21. This order was also shipped to Phoenix Warehouse and in 5 separate shipments. | Undisputed for the purposes of this motion. |
| 22. Of the 6000 hoverboards ordered, the Plaintiff delivered a total of 5808 hoverboards for a total bill of $929,280.00. | Undisputed for the purposes of this motion. |
| 23. In all, the Defendant has only made three payments for the two orders: on or about December 23, 2016, the Plaintiff received a payment of $570,000.00; on or about March 1, 2017, the Plaintiff received another payment of $99,460.00, and, on or about March 13, 2017, the Plaintiff received another payment of $95,850.00. In all the Plaintiff received a total of $765,310 in payments from Defendant. | Undisputed for the purposes of this motion. |
| 24. Since then, there have been no other payments received for these two purchases, nor has there been any additional discounts provided. | Undisputed for the purposes of this motion. |
| 25. Defendant, thus, has an outstanding balance owing of $1,027,580.00. | Disputed. Defendant is entitled to set off its damages from the amounts due under the invoices that Plaintiff sued upon. |
| 26. The hoverboards that Defendant purchased from the Plaintiff were assigned with the SKU number of T34764 ("764"). | Undisputed for the purposes of this motion. |

6

**DEFENDANT/COUNTERCLAIMANT'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS**

2044197

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 27. The 764 hoverboards were the same identical hoverboards that Plaintiff sold to QVC with the 604 SKU number. | Disputed. T34764 had the incorrect batteries. |
| 28. The Model C's were assigned a different SKU number because it was the Defendant who were now selling the Model C's, so QVC assigned a different SKU Number. | Undisputed for the purposes of this motion. |
| 29. The hoverboards that Defendant purchased from the Plaintiff were also submitted to QVC for quality testing and eventually passed. | Disputed. Initially, QVC did not test the hoverboards submitted by Defendant. Instead, QVC transferred the approval from T34604 to T34764 because the hoverboards were identical. *See* Exhibit 11. Later on, QVC tested T35011, which failed due to having an incorrect battery. |
| 30. At the start of the business arrangement in December of 2016, the Plaintiff and Defendant discussed the Defendant being the exclusive vendor of the Model C's for QVC. Defendant wished to be the exclusive supplier of the hoverboards to QVC. Plaintiff responded that they can have such an agreement but wanted to first meet to discuss their partnership further. | Undisputed for the purposes of this motion. |

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 31. Though the Plaintiff and Defendant had discussed such an arrangement, the two sides never agreed to an exclusivity agreement or execute any sort of written exclusivity agreement. | Disputed. The parties agreed that Defendant would fill Plaintiff's shoes as the exclusive seller because Plaintiff could not drop ship the hoverboards to QVC's customers. Moreover, Plaintiff's principal confirms that the parties entered into the arrangement on numerous occasions. *See* Declaration of Eric Lu in Support of Plaintiff's Motion for Summary Judgment ("Lu Decl."), p. ¶¶ 12-14; *see* Exhibit 17. |
| 32. On or about April 16, 2017, the Defendant proposed, in part, on keeping all the boards, pay 50% by May 1, 2017, pay the remaining 50% by June 5, 2017 and have "an exclusive contract drafted per our conversation." The Plaintiff never agreed this proposal. | Disputed in that this arrangement concerned the purchase of hoverboards by Defendant's subsidiary, Magnification, Inc., a separate venture altogether. *See* Deposition Transcript of Charles Tebele ("Tebele Transcript"), p. 64, ¶¶ 1-10. |
| 33. On or about June 5, 2017, the Plaintiff wrote the Defendant an email asking for outstanding payment or to have the Model C's returned. | Undisputed for the purposes of this motion. |

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 34. On or about June 6, 2017, the Defendant responded that the hoverboards that the Plaintiff sold it had "a litany of QA issues." | Undisputed except this was not the first time Defendant provided Plaintiff notice of the delivery of nonconforming goods. *See* Exhibits 8, 9. |
| 35. The Plaintiff responded the same day by asking that the Defendant return the boards to the Plaintiff and requesting (and receiving) a copy of that QVC's QA Report. | Undisputed for the purposes of this motion. |
| 36. The QVC's QA Report reflects a hoverboard with a different SKU number of T35011 and not the 604 number previously assigned to Plaintiff's hoverboard. | Undisputed for the purposes of this motion, T35011 was supposed to be same hoverboard as T34604 except QVC changed the SKU when it required Defendant to ship the goods directly to QVC's warehouse instead of drop ship to QVC's customers. |
| 37. Defendant continued to refuse to pay and refused to return the hoverboards. | Undisputed for the purposes of this motion. |
| 38. On or about June 23, 2017, the Plaintiff sent the Defendant an email and issued a Return Merchandise Authorization Number ("RMA") of 1420 for the return of 5808 Model C's and asked the Defendant to make arrangement for its pick-up. Defendant did not respond to this email. | Undisputed for the purposes of this motion. |

**DEFENDANT/COUNTERCLAIMANT'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS**

2044197

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 39. Not hearing anything, the Plaintiff sent another email on June 27, 2017 to reiterate its request to pick-up the boards. Again, Defendant did not respond. | Undisputed for the purposes of this motion. |
| 40. Still, not hearing anything, the Plaintiff sent a third email on June 27, 2017 to request an update. | Undisputed for the purposes of this motion. |
| 41. Defendant finally responded, telling Plaintiff that the hoverboards were "currently on HOLD pending legal review." | Undisputed for the purposes of this motion. |
| 42. The hoverboards Defendant purchased from the Plaintiff were still in Defendant's warehouse upon learning that they "had a litany of issues." | Undisputed for the purposes of this motion. |
| 43. The Defendant has put a hold and still has not returned any of the hoverboards it purchased from the Plaintiff. | Undisputed for the purposes of this motion. On July 10, 2017, Defendant received a letter from Cash Capital Group, LLC advising Defendant of their security interest in and among other things, future accounts where ever located. |
| 44. As of today, the Plaintiff has not received any returned hoverboards from the Defendant. | Undisputed for the purposes of this motion. On July 10, 2017, Defendant received a letter from Cash Capital Group, LLC advising Defendant of their security interest in and among other things, future accounts where ever located. |

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 45. If the boards were returned today, the Plaintiff would not be able to sell them. | Disputed to the extent Defendant is able to respond to such a statement. |
| 46. At no point did Defendant stop selling the 764 hoverboards to QVC. Defendant continued to sell the 764 hoverboards, without any suspension in sales, until the inventory was sold out. | Disputed. Defendant stopped selling the hoverboards in June of 2017. |
| 47. Defendant continued to sell the 764 hoverboards after June of 2017. | Disputed. Defendant stopped selling the hoverboards in June of 2017. |
| 48. From June 2017 to December 2017, the Defendant sold an additional 3,658 of the 764 hoverboards | Disputed. Defendant stopped selling the hoverboards in June of 2017. |
| 49. As of today, the Defendant has not notified the Plaintiff of any claim or suit related to the hoverboards Plaintiff sold to the Defendant. | Undisputed for the purposes of this motion. |
| 50. Plaintiff requested documents supporting the Defendant's claim for damages and its seventh cause of action, as per its counterclaim | Undisputed for the purposes of this motion. |
| 51. Defendant responded by stating "See documents bates stamped "Digital Gadgets 1 to Digital Gadgets 278' and electronically stored information", and producing documents bates stamped "Digital Gadgets 1 to Digital Gadgets 278'. | Undisputed for the purposes of this motion. |

| PLAINTIFF'S STATEMENT | DEFENDANT'S RESPONSE |
|---|---|
| 52.   None of the documents produced were responsive to Defendant's claim for damages and its seventh cause of action, and no other documents or electronically stored information have since been produced by the Defendant. | Disputed. Defendant's document production shows that Defendant was unable to sell the hoverboards under QVC SKU T35011. |

Dated:  December 10, 2018

LAZARUS AND LAZARUS, P.C.

By: /s/ Harlan M. Lazarus
    HARLAN M. LAZARUS, ESQ.
Attorneys for Defendant/Counter-claimant, **DIGITAL GADGETS, LLC**

**DEFENDANT/COUNTERCLAIMANT'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS**

2044197