Roger C. Hsu - SBN 170589
Joseph M. Liu - SBN 220938
LAW OFFICES OF ROGER C. HSU
175 South Lake Avenue, Suite 210
Pasadena, CA 91101
Telephone:  (626) 792-7936
Facsimile:  (626) 685-2859
rchlaw@att.net
joseph@liu.com

Attorneys for Plaintiff/Counter Defendant Interworks Unlimited, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Interworks Unlimited, Inc., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> Digital Gadgets, LLC., a New Jersey limited liability company, <br><br> Defendant. <br> ————————————————— <br> Digital Gadgets, LLC., a New Jersey limited liability company, <br><br> Counterclaimant, <br><br> v. <br><br> Interworks Unlimited, Inc., a California corporation, <br><br> Counter-defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Case No. 2:17-cv-4983 AB TJH KSx)** <br> **PLAINTIFF INTERWORKS UNLIMITED, INC.'S REPLY TO DEFENDANT DIGITAL GADGETS, LLC'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:      January 7, 2019 <br> Time:      UNDER SUBMISSION <br> Courtroom: 9B |

# **TABLE OF CONTENTS**

I.   INTRODUCTION _____ vii

II.  MEMORANDUM OF POINTS AND AUTHORITIES _____ 1

A.   NO TRIABLE ISSUE OF MATERIAL FACT IS PRESENTED IN
DEFENDANT'S SEPARATE STATEMENT OF MATERIAL FACTS _____ 1

B.   PLAINTIFF HAS STANDING TO BRING THESE CLAIMS _____ 1

1.   THE STANDING DOCUMENTS WERE NOT PRODUCED AS
REQUIRED AND MUST BE EXCLUDED. _____ 2

a)   DEFENDANT HAD MULTIPLE OPPORTUNITIES AND FAILED TO
PROVIDE THE STANDING DOCUMENTS _____ 2

b)   DEFENDANT'S FAILURE TO PRODUCE THE STANDING
DOCUMENTS BARS THEM FROM INTRODUCING THE EVIDENCE
NOW _____ 3

2.   THE STANDING DOCUMENTS ARE INADMISSIBLE BECAUSE
DEFENDANT FAILED TO COMPLY WITH THE RULES OF EVIDENCE  4

a)   DEFENDANT FAILED TO LAY PROPER FOUNDATION FOR
EXHIBITS 4 THROUGH 6 AND THEY CONSTITUTE HEARSAY _____ 4

3.   BIBBY HAD AN OPTION TO BUT NEVER ACCEPTED THE
ASSIGNMENT OF DEFENDANT'S ACCOUNTS _____ 6

a)   IT IS UNQUESTIONED AND DEFENDANT KNEW THAT BIBBY
REJECTED AND NEVER EXTENDED CREDIT TO THE DEFENDANT  6

4.   PLAINTIFF'S RIGHT TO COLLECT FUNDS WAS NEVER
ASSIGNED TO CCG _____ 8

a)   CCG WAS ASSIGNED AS A POWER OF ATTORNEY, NOT AN
ASSIGNMENT OF THE DIGITAL GADGETS, LLC ACCOUNT, AND
THEREFORE STILL HAS STANDING _____ 8

b)   THE AGREEMENT FOR PURCHASE DOES NOT TRANSFER AN ASSIGNMENT OF RIGHTS TO CCG _____ 10

5.   ANY INTEREST THAT BIBBY OR CCG HAD WERE TERMINATED 11

6.   FINANCING STATEMENTS ARE NOT AN ASSIGNMENT_____ 12

7.   DEFENDANT'S ARGUMENTS ARE A LAST-MINUTE HAIL MARY ATTEMPT _____ 12

C.   DEFENDANT FAILED TO GIVE NOTICE _____ 13

1.   NOTICE IS AN OPPORTUNITY TO CURE, NOT MERE NOTIFICATION OF A POTENTIAL ISSUE _____ 13

2.   DEFENDANT IS BARRED FROM REMEDY UNDER ITS BREACH OF WARRANTY CLAIMS _____ 14

3.   DEFENDANT THROWS IN IRRELEVANT SMOKE SCREENS IN AN ATTEMPT TO AVOID THE TRUE ISSUE OF NOTICE _____ 15

a)   ATTEMPTS AT REPAIRING THE GOODS _____ 15

b)   INFORMATION NECESSARY TO CONSUMMATE A DEAL WITH QVC _____ 15

c)   REQUESTS TO INSPECT THE HOVERBOARDS _____ 16

D.   NO EXCLUSIVITY AGREEMENT EXISTS _____ 16

1.   "COURSE OF DEALINGS" CANNOT FORM THE BASIS OF AN EXCLUSIVITY AGREEMENT BECAUSE THE CONTRACT FALLS WITHIN THE STATUTE OF FRAUDS _____ 16

2.   CAL. COM. CODE § 2201(b) IS INAPPLICABLE BECAUSE DEFENDANT NEVER ACKNOWLEDGED THE EXISTENCE OF AN EXCLUSIVITY AGREEMENT_____ 17

a)   PLAINTIFF NEVER ACKNOWLEDGED THE EXISTENCE OF AN EXCLUSIVITY AGREEMENT _____ 17

3.    DEFENDANT CANNOT SHOW A BASIS FOR PROMISSORY ESTOPPEL _____ 19

a)    DEFENDANT CANNOT SHOW UNCONSCIONABLE INJURY __ 19

b)    NO CLEAR AND UNAMBIGUOUS PROMISE EXISTS CONCERNING AN EXCLUSIVITY AGREEMENT _____ 20

E.    DEFENDANT HAS SHOWN NO BASIS FOR ENTITLEMENT TO OFFSET _____ 20

F.    DEFENDANT HAS NO EXCUSES FOR FAILING TO COMPLY WITH THE COMMERCIAL CODE AND IS BARRED FROM RECOVERY BECAUSE DEFENDANT ACCEPTED THE GOODS _____ 21

III.  CONCLUSION_____ 21

# TABLE OF AUTHORITIES

Cases

Alpi Int'l, Ltd v. Anga Supply, LLC (N.D. Cal. 2015) 118 F. Supp. 3d 1172 ..........7

Cal. Com. Code § 2607.....................................................................................20

Cardinal Health 301, Inc. v. Tyco Elecs. Corp. (2008) 169 Cal. App. 4th 116 13, 14

Carson Indus., Inc. v. Am. Tech. Network, Corp. (N.D. Cal. Sept. 26, 2015) 2015

   WL 12661953 ..............................................................................................14

Gray v. Horne (App. 2 Dist. 1941) 48 Cal.App.2d 372..........................................12

Hardy v. Hunt (1858) 11 Cal. 343 ......................................................................9

In re Baglione's Estate (1966) 65 Cal. 2d 192 .....................................................19

Jones v. Travelers Cas. Ins. Co. of Am. (N.D. Cal. 2015) 304 F.R.D. 677 .............4

Mozaffarian v. Breitling U.S.A., Inc. (N.D. Cal. Nov. 19, 1998) 1998 WL 827596

   .................................................................................................................17

Orichian v. BMW of N. Am., LLC (2014) 226 Cal. App. 4th 1322 ......................15

People By & Through Dep't of Pub. Works v. Malone (Ct. App. 1965) 232 Cal.

   App. 2d 531 ..............................................................................................9

Royalty Petroleum Co. v. Arkla, Inc. (W.D. Okla. 1990) 129 F.R.D. 674 ...............3

United States v. Boyce (SD CA 2001) 148 F.Supp.2d 1069 ...................................3

US Ecology, Inc. v. State of California (2005) 129 Cal. App. 4th 887 .................19

Yeti by Molly Ltd v. Deckers Outdoor Corp. (9th Cir.2001) 259 F.3d 1101 ..........4

Statutes

Cal. Civ. Code § 2304................................................................................9

Cal. Civ. Code § 2872................................................................................12

Cal. Com. Code § 2201........................................................................ 17, 19

Cal. Com. Code § 2301................................................................................21

Cal. Com. Code § 2306................................................................................17

Cal. Com. Code § 2607(3)(A)........................................................................14

Cal. Com. Code 2607(3)(A)........................................................................13

Cal. Comm. Code § 9-513 ........................................................11

Fed. R. Civ. P. § 37 .................................................................3

FRCP § 26 ..............................................................................2

FRCP § 801 ............................................................................5

FRCP § 802 ............................................................................5

**OTHER AUTHORITIES**

Black's Law Dictionary .........................................................12

# I.   *__INTRODUCTION__*

The facts here are relatively simple. Defendant Digital Gadgets, LLC ("Defendant") obtained and failed to pay for over a million dollars' worth of hoverboards from Interworks Unlimited, Inc. ("Plaintiff"). After being pressed for payment, Defendant tried to dodge and weave its way out of liability by claiming that the hoverboards were defective and refused to either pay or return the hoverboards. After Plaintiff brought suit, Defendant filed a bogus counterclaim, again trying to dodge and weave its way out of responsibility. After Plaintiff brought a Motion for Summary Judgment on both its Complaint and Defendant's Counterclaim ("MSJ"), Defendant, rather than actually raise triable issues of fact, presented the court with its Opposition ("Opposition") that, rather than set out good faith issues of fact, mimicked its previous actions by throwing smoke screens and engaging in an all-out campaign to mislead the court in an attempt to, again, dodge and weave liability. Ultimately, the buck stops - or rather, starts - here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.  *MEMORANDUM OF POINTS AND AUTHORITIES*

### A.  NO TRIABLE ISSUE OF MATERIAL FACT IS PRESENTED IN DEFENDANT'S SEPARATE STATEMENT OF MATERIAL FACTS.

Defendant's Response to Plaintiff's Statement of Uncontroverted Facts ("Undisputed Facts") fails to raise a single, triable issue of material fact. Defendant has not set forth any indicia of evidence to show that the goods were rejected in any way. Defendant has not alleged the existence of a written exclusivity agreement, failing to address the crux of Plaintiff's arguments. Undisputed Facts ¶ 12 – 13. Defendant acknowledges that it failed to pay Defendant for the hoverboards (Undisputed Facts ¶ 37) and acknowledges that it did not return the hoverboards. Undisputed Facts ¶ 43-44.

Interestingly, what the Defendant *does* do is attempt to interject some reason for not returning the hoverboards by stating that "Defendant received a letter from Cash Capital Group, LLC advising Defendant of their security interest in and among other things, future accounts where ever located." Undisputed Facts ¶ 43-44. However, as elaborated on below, Cash Capital Group, LLC was never assigned the invoices related to transactions between Plaintiff and Defendant. Further, the question remains unanswered – if Defendant did not return the goods because of the letter from Cash Capital Group, LLC, then why didn't they forward any payment or return the hoverboards to Cash Capital Group, LLC? Finally, Defendant does not, at any point, allege that they notified Plaintiff that they either sought to repair or return the hoverboards. Accordingly, Plaintiff is entitled to Summary Judgment.

### B.  PLAINTIFF HAS STANDING TO BRING THESE CLAIMS.

Defendant tries to knock out a home run by arguing that Plaintiff lacks standing to bring this suit because the relevant invoices were assigned to Bibby

- 1 -

Financial Group, Inc. ("Bibby") and Cash Capital Group, Inc. ("CCG"). Defendant primarily relies on three pieces of evidence in support:

- "Agreement for the Purchase and Sale of Future Receipts" ("Agreement for Sale" herein), attached as Defendant's Exhibit ("DE") 4;
- UCC Financing Statements for Cash Capital ("Financing Statements") (DE 5), and
- a letter from the Rubin Law Firm ("Rubin Letter") (DE 6).

("Standing Documents" summarily herein). These arguments fail because (1) each piece of evidence that Defendant relies on is inadmissible because Defendant failed to comply with both the rules of Evidence and Civil Procedure; (2) Bibby was never assigned any of the invoices between Plaintiff and Defendant; (3) CCG was never assigned any of the invoices between Plaintiff and Defendant; and (4) CCG was only assigned Plaintiff's future receipts.

## 1.    THE STANDING DOCUMENTS WERE NOT PRODUCED AS REQUIRED AND MUST BE EXCLUDED.

### a)    *DEFENDANT HAD MULTIPLE OPPORTUNITIES AND FAILED TO PROVIDE THE STANDING DOCUMENTS.*

Despite having been required to and having had the opportunity to produce the Standing Documents on a multitude of occasions, Defendant never did. As a result, Defendant is barred from the introduction of this evidence at this stage.

Under FRCP § 26(a)(1)(A)(ii), a party must provide "(ii) a copy-or a description by category and location-of **all documents**, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use **to support its claims or defenses**, unless the use would be solely for impeachment." FRCP § 26(a)(1)(A)(ii) [Emph. Added]. In subsequent discovery, Plaintiff requested from Defendant all documents that supported its defenses. *(See Declaration of Joseph M. Liu)*

- 2

Disclosures under Rule 26(a) and responses to Interrogatories, Requests for Production, and Requests for Admission must be supplemented or corrected in a timely manner if the responding or disclosing party learns that the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. § 37. This continuing disclosure applies to evidence discovered or coming into a party's possession after an earlier document request for such documents. *See* <u>United States v. Boyce</u> (SD CA 2001) 148 F.Supp.2d 1069, 1088.

Here, Defendant's answer alleges that Plaintiff lacked standing as an affirmative defense. Thus, the Defendant had two opportunities – both under initial disclosures and under discovery responses - and a continuing duty to produce the required documents to substantiate its defense of standing prior to the court ordered non-expert discovery cut-off on October 19, 2018.

However, the Defendant never produced the Standing Documents. *(See Declaration of Joseph M. Liu)* It is too late for the Defendant to now rely on these documents.

b)      *DEFENDANT'S FAILURE TO PRODUCE THE STANDING DOCUMENTS BARS THEM FROM INTRODUCING THE EVIDENCE NOW.*

"If a party fails to provide information… as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence **on a motion, at a hearing, or at a trial**, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. § 37. [Emph. Added].

The decision to produce documents at such a late stage in litigation is "a last second trial-by-ambush tactic, which simply can not be permitted in modern federal practice." <u>Royalty Petroleum Co. v. Arkla, Inc.</u> (W.D. Okla. 1990) 129 F.R.D. 674, 678.  When documents are not timely produced, Rule 37(c)(1) is

Case 2:17-cv-04983-TJH-KS   Document 52   Filed 12/26/18   Page 11 of 28   Page ID #:1080

"self-executing" and "automatic." <u>Yeti by Molly Ltd v. Deckers Outdoor Corp.</u> (9th Cir.2001) 259 F.3d 1101, 1106. Once non-compliance is shown, the burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions. <u>Jones v. Travelers Cas. Ins. Co. of Am.</u> (N.D. Cal. 2015) 304 F.R.D. 677, 679.

 Defendant never introduced the Standing Documents. Given that, Defendant had a duty to establish exactly why its failure to produce was not substantially justified or harmless. Defendant failed to do so. While this may not be "trial by ambush," it most certainly is "opposition by ambush." Accordingly, the documents must be excluded and cannot be relied on in determining Defendant's defenses.

## 2. THE STANDING DOCUMENTS ARE INADMISSIBLE BECAUSE DEFENDANT FAILED TO COMPLY WITH THE RULES OF EVIDENCE.

 In addition to the Federal Rules of Civil Procedure, the Standing Documents must be excluded because the Defendant has failed to comply with the Federal Rules of Evidence. Namely, the documents are inadmissible because (1) Defendant has not laid the proper foundation for their admissibility; (2) the documents constitute inadmissible hearsay.

### a) DEFENDANT FAILED TO LAY PROPER FOUNDATION FOR EXHIBITS 4 THROUGH 6 AND THEY CONSTITUTE HEARSAY

 Under FRCP 901(a) "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This can include "Testimony that an item is what it is claimed to be" FRCP 901(b)(1)

 Here, Exhibits 4-6 are inadmissible because the Defendant did not lay proper foundation. All that is set forth is a declaration from Defendant's lawyer that these

- 4 -

documents were "produced in discovery in this case" *(see Paragraphs 5-7 of Declaration of Harlan Lazarus in Support of Opposition to Summary Judgment)* Such evidence is insufficient to authentic these three exhibits.  There were no statements as to when, where and from whom the Defendant obtained these documents.  They were not produced by the Plaintiff *(see Declaration of Joseph M. Liu)* and, if they were produced pursuant to a subpoena, there was no evidence showing any sort of authentication from the producing party or its custodian of records.

"Hearsay" is a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. FRCP § 801(c). Hearsay is inadmissible unless provided by (1) a federal statute, (2) these rules, or (3) other rules prescribed by the Supreme Court." FRCP § 802. The Standing Documents are all hearsay.

In its Opposition, Defendant relies on the Agreement for Sale to stand for the proposition that Plaintiff assigned to CCG a Specified Percentage of the proceeds of each future sale made by Plaintiff. [Defendant's Opp. Pg. 6 lns. 8-16]. Defendant *explicitly* relies on that to show that a portion of the funds that Plaintiff were to receive from Defendant were assigned to CCG. Hence, the document constitutes hearsay.

The Financing Statements fail for the same issue. The Financing Statements states that each and every single one of Plaintiff's assets constitute collateral in favor of CCG. Defendant holds this language to indicate that CCG has a lien on Plaintiff's assets. [Reply to Opp. Pgs. 6:25 – 7:1]. Accordingly, it stands for the truth of the matter asserted, and, again, constitutes hearsay.

The Rubin Letter follows suit. Defendant relies on the Rubin Letter to stand for the proposition that Plaintiff sold, assigned, and transferred to CCG a certain percentage of its future receivables and that it directed Defendant to make

payment directly to CCG. [Reply to Opp. Pgs. 6: 3-6]. In identical language, the Rubin Letter specifically states that Interworks has "sold, assigned and transferred to CCG a certain percentage of its future receivables." Accordingly, the Rubin Letter offers to prove the truth of the matter asserted.

Defendant is attempting to use the truth of the matter asserted in the Standing Documents to create a triable issue of fact. However, Defendant has not made a single attempt to ensure that these conform to the evidentiary requirements and the relevant hearsay exceptions, and they have not made any efforts because it would be meritless.  Accordingly, the Standing Documents are inadmissible to support Defendant's Opposition.

### 3.    BIBBY HAD AN OPTION TO BUT NEVER ACCEPTED THE ASSIGNMENT OF DEFENDANT'S ACCOUNTS.

Defendant argues that the Master Purchase and Sale Agreement between the Plaintiff and Bibby supports its contention that Defendant's account was assigned to Bibby.  But the document speaks for itself.  It says that Bibby "shall have the **option** to purchase from and [Interworks] shall assign and offer to [Bibby], as [Intework's] sole and exclusive **factor**" Plaintiff's account receivables. [Emph. Added]. The key word is "option."  Bibby, Plaintiff's factor, had the <u>option</u> to purchase Plaintiff's account receivables. Until then, it was just that - an option. Bibby never exercised the option to purchase any accounts receivables due Plaintiff from Defendant. *(See below and Declaration of Eric Lu)*

### a)    *IT IS UNQUESTIONED AND DEFENDANT KNEW THAT BIBBY REJECTED AND NEVER EXTENDED CREDIT TO THE DEFENDANT.*

In reliance on language that was stamped on the invoices, Defendant's Opposition states that the invoices in question were assigned to Bibby. [Opp. 5:6-21]. Bibby, once Plaintiff's factor, was requested to extend credit coverage on a few invoices issued to the Defendant. To do so, the Plaintiff needed to forward

those invoices to Bibby with the stamp indicating the assignment if and when Bibby agreed to provide credit coverage.

Regardless of what the invoices say, it is unquestioned that Bibby categorically refused to extend credit to Defendant and never accepted the invoices. It is astonishing that Defendant can now, in good faith, raise this argument given that *Bibby specifically informed them of their rejection.* On February 14, 2017, Plaintiff and Defendant received an email from Bibby specifically concerning the request to assign the account receivables to Bibby and the rejection thereof. The email states, verbatim:

> …Based on the information she received, she won't be able to extend coverage on Digital Gadgets.

*(See Declaration of Eric Lu¶11 and attached Exhibit A)* Shortly thereafter, on March 1, 2017, Eric Lu sent Defendant an email effectively memorializing the Bibby rejection. The March 1, 2017 email states, in relevant part,

> I gave you guys 60days on the lower cost **which I have to carry the AR**

[Emph. Added] *(See Exhibit 17 of Defendant's Opposition)* Lu was specifically acknowledging that and Defendant understood that Bibby rejected Defendant's application.

Defendant raising the argument that their account was assigned to Bibby is disingenuous and frivolous. Defendant knew that their account was never assigned to Bibby. Defendant was made aware on at least two separate occasions that Bibby rejected extensions to Defendant. Thus, as Plaintiff stated during deposition, the invoices were never assigned to Bibby.

In addition, Defendant's legal authority does not support its position. Defendant relies on Alpi Int'l, Ltd v. Anga Supply, LLC (N.D. Cal. 2015) 118 F. Supp. 3d 1172, 1176 to stand for the proposition that the invoices speak for themselves and create issues of fact barring summary judgment. A cursory

review of <u>Alpi</u> reveals that <u>Alpi</u> has no bearing on this matter whatsoever. <u>Alpi</u> addresses a copyright infringement issue wherein the two parties, competitors who manufactured and sold "stress reliever toys," each moved for summary judgment based on copyright infringement claims. <u>Id.</u> at 1174.  The court specifically stated that copyright infringement inquiries require a two-part extrinsic/intrinsic test, with the extrinsic part consisting of examining similarities between the copyrighted and challenged works. <u>Id</u> at 1176. Thus, the court was examining two different products to determine whether or not they, on their face, showed enough differences to constitute a triable issue of fact for purposes of summary judgment on a copyright infringement issue.

Defendant is attempting to take <u>Alpi</u>'s ruling an undeserved step forward. The court was examining two items for differences, the characteristics of which had huge consequences. Here, we have a single document – the invoices with stamps on them – that Defendant is attempting to afford an interpretation that it is very well aware is not accurate. To bring it into <u>Alpi</u>'s orbit, it would be akin to one of the parties stating that they, in fact, infringed on the other party's design.

### 4.    PLAINTIFF'S RIGHT TO COLLECT FUNDS WAS NEVER ASSIGNED TO CCG.

Defendant claims that the accounts receivable associated with Defendant's accounts were assigned to CCG, citing the Agreement for Sale and the Rubin Letter in support. Opp. Page 6 lns 3-7. Defendant totally and completely mischaracterizes the terms of the Agreement for Purchase and Rubin Letter.

> *a)    CCG WAS ASSIGNED AS A POWER OF ATTORNEY, NOT AN ASSIGNMENT OF THE DIGITAL GADGETS, LLC ACCOUNT, AND THEREFORE PLAINTIFF STILL HAS STANDING.*

The exact language of Section 5 of the CCG Agreement, dated January 12, 2017, states that "[Interworks] irrevocably appoints [CCG] as its **agent** and

**attorney-in-fact** with full authority to take any action or execute any instrument or document…" [Emph. Added]. The Rubin Letter, sent subsequent to the Agreement for Purchase, states

> (CCG) and (Plaintiff) have entered into that certain (Agreement for Purchase), dated January 12, 2017…a copy of which is enclosed with this letter. Pursuant to the language of the Merchant Agreement…

Thus, any rights exercised from the Rubin Letter were derived under the Agreement for Purchase.

By its terms, the Agreement for Sale transfers an appointment of an agency and attorney-in-fact. "An attorney in fact is one who is given authority by his principal to do a particular act not of a legal character. The term "'attorney in fact' is, in loose language, used to include agents of all kinds, but in its strict legal sense it means an agent having a special authority created by deed." People By & Through Dep't of Pub. Works v. Malone (Ct. App. 1965) 232 Cal. App. 2d 531, 536. Thus, CCG's rights as to Plaintiff are dictated by the laws of agency.

The very definition and rules of agency are instructional. "An agent is one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2304. An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal. Cal. Civ. Code § 2330. Based on that, it has been a hallmark of agency that "(a)n agent, ordinarily, cannot sue in his own name in respect to the subject-matter of his agency." Lineker v. Ayeshford (1850) 1 Cal. 75. Rather, it is an axiom of agency that the right to sue lies in the hands of the principal. Hardy v. Hunt (1858) 11 Cal. 343, 347.

As Plaintiff's agent and/or attorney-in-fact, Plaintiff was CCG's principal. CCG could only act on Plaintiff's behalf. In acting on Plaintiff's behalf, any

- 9

action must have been brought on Plaintiff's behalf, in Plaintiff's name. Accordingly, Plaintiff was never stripped of standing.

> ### b)   THE AGREEMENT FOR PURCHASE DOES NOT TRANSFER AN ASSIGNMENT OF RIGHTS TO CCG.

Moreover, the CCG Agreement could not be clearer. What is transferred is the proceeds of certain "Future Receipts." The definition of Future Receipts, while lengthy, is limited to the following:

> All payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Seller's business.

The only thing that is assigned are payments that are made to Plaintiff. What is *not* being assigned is the full account.

Defendant argues that the Rubin Letter creates a triable issue of fact with respect to standing. This is, again, befuddling. Defendant misconstrues the Rubin Letter to stand for the proposition that Plaintiff has transferred Defendant's account in its entirety to CCG. This is not the case.

The Rubin Letter states, in exact terms, that

> (CCG) and (Plaintiff) have entered into that certain (Agreement for Purchase), dated January 12, 2017…a copy of which is enclosed with this letter. Pursuant to the language of the Merchant Agreement, the Merchant has sold, assigned and transferred to CCG a certain percentage of its future receivables…The terms of the Agreement (i) permits CCG to notify Digital Gadgets, LLC of the sale of receivables and to direct Digital Gadgets, LLC to make payment directly to CCG of all or any portion of the amounts received by Digital Gadgets, LLC and (ii) irrevocably appoints CCG as the Merchant's **agent and attorney-in-fact** with full authority to take any action or execute any instrument or document and to settle all obligations due to CCG, including collecting money and directing third parties to make payment to CCG in satisfaction of the amounts owed under the (Agreement for Purchase).

[Emph. Added]. The Rubin Letter rests the entirety of its authority in the Agreement for Purchase. The Agreement for Purchase, as stated above, in no way

- 10 -

*assigns* an account to CCG. Interestingly, at no time in the Rubin Letter does CCG claim any authority to bring an action against Defendant. The reasoning is simple – they never had the authority to. Any action would be brought by Plaintiff, in Plaintiff's name.

### 5.    ANY INTEREST THAT BIBBY OR CCG HAD WERE TERMINATED.

Regardless, CCG and Bibby have both terminated their interests in any of Plaintiff's property. "Upon the filing of a termination statement with the filing office, the financing statement to which the termination statement relates ceases to be effective." Cal. Comm. Code § 9-513. On July 13, 2018, Bibby filed a UCC Financing Statement Amendment indicating that the that their previous financing statements had been terminated. *(See also Declaration of Eric Lu ¶14 ["In or about July of 2018, the Plaintiff entered into a Buy-Out Agreement with Bibby in which the parties ceased doing business with each other."])*  And on July 25, 2018, CCG filed a UCC Financing Statement Amendment indicating that their previous financing statements had been terminated. *(See Exhibit 3, Page 49 & Exhibit 5, Page 62 of Defendant's Opposition) (See also Declaration of Eric Lu¶¶16,17 ["In or about July of 2018, Cash Capital and Plaintiff entered into a settlement agreement that settled and terminated all claims and suits against each other." and "This settlement agreement superseded all previous agreements between the Cash Capital and the Plaintiff including, without limitation, the "Agreement of the Purchase and Sale of Future Receipt" that was entered into in or about January of 2017".])* Accordingly, any interest is now firmly rooted in Plaintiff's hands. And it should be noted that the UCC Financing Statement filed by Bibby to reflect an assignment back in May of 2018 was simply an assignment from "Bibby Financial Services (CA), Inc." to "Bibby Financial Services, Inc." *(See Exhibit 3, Page 48)* In no way did this document reflect any assignment from the Plaintiff to Bibby.

- 11

### 6.   FINANCING STATEMENTS ARE NOT AN ASSIGNMENT.

Plaintiff briefly raises issue with the Financing Statements filed by Bibby with the California Department of State. The Financing Statements allege the existence of "a lien on "all assets of [Interworks], now existing and hereafter arising, wherever located." However, Defendant makes no effort to show how this would deprive the Plaintiff of standing.

A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act. Cal. Civ. Code § 2872.0 A ""lien", in its broadest sense and common acceptation, denotes a legal claim or charge on property, either real or personal, as security for payment of some debt or obligation." Gray v. Horne (App. 2 Dist. 1941) 48 Cal.App.2d 372. Typically, the creditor does not take possession of the property on which the lien has been obtained. LIEN, Black's Law Dictionary (10th ed. 2014). The Defendant has failed to show how this lien can be construed as an assignment.

### 7.   DEFENDANT'S ARGUMENTS ARE A LAST-MINUTE HAIL MARY ATTEMPT.

The totality of Defendant's actions surrounding its argument for standing show exactly what this argument is: a last minute, hail mary attempt to avoid liability concocted by Defendant's counsel. Defendant summarily failed to provide documents concerning standing. In deposition, nobody in Defendant's camp went so far as to mutter the words "Cash Capital Group" and only mentioned Bibby in evasive terms.

Assuming that Defendant actually thought there was an issue with where the payments should be directed, more questions arise around Defendant's actions. Why didn't they pay CCG? Why didn't they pay Bibby? Why didn't they return the goods to either company? If they didn't know where they should be

sent, why didn't they ask? To argue now that the reason no action was taken with regards to returning merchandise or submitting payment is because of questioning where to remit payment is disingenuous.

### C.   DEFENDANT FAILED TO GIVE NOTICE.

In an attempt to avoid the harsh consequences of the failure to comply with Cal. Com. Code 2607(3)(A), Defendant sets forth a litany of issues that attempt to show that "notice" was properly given. None of these arguments actually address the definition of notice; rather, they dance around, hoping to distract the court from the law. Accordingly, Defendant is not absolved of its liability.

### 1.   NOTICE IS AN OPPORTUNITY TO CURE, NOT MERE NOTIFICATION OF A POTENTIAL ISSUE.

Defendant claims that adequate, timely notice was given as required under Cal. Com. Code 2607(3)(A) by stating that (1) Plaintiff has misconstrued the requirements of "notice" as requiring an opportunity to cure and (2) Plaintiff was on notice that there were issues as early as May 2, 2017.

California courts side with Plaintiff. The purpose of "notice" under this section is "to allow the seller the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate settlements." Cardinal Health 301, Inc. v. Tyco Elecs. Corp. (2008) 169 Cal. App. 4th 116, 135. In Oddo v. Arcoaire Air Conditioning & Heating, 2017 WL 372975, at *7 (C.D. Cal. Jan. 24, 2017), the court *expressly* stated that "The laws of California…require consumers to provide the manufacturer with an opportunity to cure a failure to comply with a warranty before the consumer may bring an action for breach of warranty… Cal. Com. Code § 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy")." When two parties are merchants, "the essential content of the notice must set forth the nonconformity in the goods materially impairing their value to the buyer. The

- 13

content must also inform the seller that the buyer does not wish to keep the goods. <u>Carson Indus., Inc. v. Am. Tech. Network, Corp.</u> (N.D. Cal. Sept. 26, 2015) 2015 WL 12661953, at *4. In <u>Carson Indus., Inc.</u> the court *specifically* held that a buyer's failure to inform a seller that they intended to either return the goods or submit them for repair with a third party, barred relevant claims.

Defendant attempts to rely on <u>Cardinal</u> to show that an opportunity to cure is not required by pointing out that <u>Cardinal</u> dismissed a lawsuit based on the fact that notice was not given prior to the lawsuit, not based on an opportunity to cure. Defendant is again misguided. In <u>Cardinal</u>, the court was not required to determine whether not there was an opportunity to cure because the threshold requirement was not met – specifically, the seller had *no idea* that the goods were subject to some sort of deficiency. The standard that Defendant seemingly puts on <u>Cardinal</u>'s seller is preposterous – how could an opportunity to cure be provided without actual knowledge of a deficiency?

Defendant calls the opportunity to cure "merely a policy discussion." [Opp. Pg.10 20-21]. Assuming, arguendo, that this *is* a policy argument, it is still uncontroverted that Defendant failed to comply with the policy rationale behind the notice requirement. More than just the failure to return, there was an *outright refusal* by Defendant to return the goods.

## 2. DEFENDANT IS BARRED FROM REMEDY UNDER ITS BREACH OF WARRANTY CLAIMS.

Defendant addresses notice twice, once specifically with respect to its application to Defendant's Breach of Warranty claims. Defendant again claims that Plaintiff has misconstrued the requirements of Cal. Com. Code § 2607(3)(A) to require that a purchaser must allow a seller to repair its breach. As elaborated above, this argument is nonsensical. Courts require the opportunity to cure.

Defendant also claims that Plaintiff has not expressed how Defendant failed to comply with the elements of a Breach of Express Warranty claim. This

- 14 -

is bewildering. As stated in Plaintiff's Memorandum, the "essential elements" for breach of an express warranty are "(1) an express warranty…to repair defects given in connection with the sale of goods; (2) the existence of a defect covered by the warranty; (3) the buyer's notice to the seller of such a *1334 defect within a reasonable time after its discovery (*id.,* § 2607, subd. (3)(A)); (4) the seller's failure to repair the defect in compliance with the warranty; and (5) resulting damages." Orichian v. BMW of N. Am., LLC (2014) 226 Cal. App. 4th 1322, 1333–34. The elements require notice, subject to 2607(3)(A). The definition of notice has been elaborated ad nauseum above, and it is unquestioned that Plaintiff was not given an opportunity to cure.

### 3.    DEFENDANT THROWS IN IRRELEVANT SMOKE SCREENS IN AN ATTEMPT TO AVOID THE TRUE ISSUE OF NOTICE.

Undoubtedly understanding that the issue of notice is unavoidable, Defendant tries to escape liability by throwing in a number of smoke screens in a valiant, albeit meritless, effort to misguide the court.

#### a)    *ATTEMPTS AT REPAIRING THE GOODS*

Defendant tries to avoid liability by stating that Plaintiff had no interest in repairing the nonconformity, pointing to Plaintiff's emails that reference the manufacturing company. Conveniently, Defendant ignores the fact that Plaintiff went a step beyond offering to repair the hoverboards – the Plaintiff requested the return of the hoverboards, which Defendant outright refused to do. The truth is, Defendant had no desire to return the goods.

#### b)    *INFORMATION NECESSARY TO CONSUMMATE A DEAL WITH QVC*

Defendant claims that Plaintiff refused to provide necessary information to help consummate a deal with QVC. That is wholly irrelevant for purposes of notice. Defendant had a responsibility to give notice of the defect, which they did

1  not do. Defendant's position here, though, raises a perplexing question; if the
2  goods did not conform, then why would they want to consummate the
3  transaction?

4  　　　　　　　　*c)*　　　*REQUESTS TO INSPECT THE HOVERBOARDS*

5  　　　　Finally, Defendant states that Plaintiff never asked to inspect the
6  hoverboards. First and foremost, Defendant has not pointed out any legal support
7  for its position that Plaintiff was required to asked to inspect the hoverboards, nor
8  will it be able to. More to the point, though, this argument is nothing short of
9  bewildering, and can only cause Plaintiff to throw its hands up in despair.
10  Defendant is somewhat right – the Plaintiff didn't request an inspection. But, at
11  that same end, the Defendant ignores that Plaintiff requested their return, and
12  suppress the fact that Defendant refused to do so. The onus is on the Defendant to
13  provide for an opportunity to cure.

14  　　　　What and how was Plaintiff supposed to do to remedy the situation?
15  Defendant essentially handcuffed the Plaintiff by failing to allow for the return of
16  the goods. Defendant failed to give proper notice of the alleged nonconformity by
17  failing to provide for an opportunity to cure and is now barred from ***ANY***
18  recovery.

19  　　**D.**　　**NO EXCLUSIVITY AGREEMENT EXISTS**

20  　　　　Defendant attempts to maintain its claims to an exclusivity agreement by
21  stating that (1) an exclusivity agreement exists by course of dealings, that (2)
22  Plaintiff acknowledged the existence of an arrangement, and that (3) promissory
23  estoppel applies. These arguments summarily fail.

24  　　　　**1.**　　**"COURSE OF DEALINGS" CANNOT FORM THE**
25  　　　　　　**BASIS OF AN EXCLUSIVITY AGREEMENT BECAUSE THE**
26  　　　　　　**CONTRACT FALLS WITHIN THE STATUTE OF FRAUDS.**

27  　　　　Defendant claims that the exclusivity agreement was formed via parties'
28  course of dealings. As set forth in Plaintiff's Memorandum, an "Exclusive

- 16

Dealings" contract, as defined by Cal. Com. Code § 2306(2), must be in writing when it involves a sale of goods over $500. Cal. Com. Code § 2201; *see* Mozaffarian v. Breitling U.S.A., Inc. (N.D. Cal. Nov. 19, 1998) 1998 WL 827596. Defendant has seemingly ignored Plaintiff's argument. There was no written agreement here, and Defendant cannot escape those consequences.

### 2. CAL. COM. CODE § 2201(b) IS INAPPLICABLE BECAUSE DEFENDANT NEVER ACKNOWLEDGED THE EXISTENCE OF AN EXCLUSIVITY AGREEMENT.

Defendant attempts to rely on Cal. Com. Code § 2201(b) to bring the exclusivity agreement outside the purview of the statute of frauds, by claiming that an exception exists when a party admits the existence of a contract. The relevant portions of § 2201 state that

> A contract which **does not satisfy the requirements of subdivision (1)** but which is valid in other respects is enforceable…
> (b)  If the party against whom enforcement is sought admits in his or her pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted.

[Emph. Added.] The referenced Subdivision 1 states

> Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker.

### a) PLAINTIFF NEVER ACKNOWLEDGED THE EXISTENCE OF AN EXCLUSIVITY AGREEMENT.

If the Plaintiff's admission of the existence of an exclusivity agreement would save Defendant's cause of action, it makes no difference – the Defendant has failed to point to a single article of evidence showing that Plaintiff acknowledged an exclusivity agreement. Throughout its argument, Defendant avers to the allegation of an "arrangement" between the parties as evidence of the

existence and admission of an exclusivity agreement. Defendant relies on 2 documents in support of its position of an "arrangement": the Declaration of Eric Lu ("Lu Decl.") and an email dated March 1, 2017.

      Lu's Declaration states the following:

> 12. Plaintiff, however, did not have the ability to "drop ship" the hoverboards to QVC's customers.
> 13. Thus, in or about December of 2016, Plaintiff decided to enter into an arrangement with Defendant Digital Gadgets, LLC. ("Defendant"), who said they had the ability to drop ship with QVC.
> 14. In that arrangement, the Defendant would purchase the Model C's from the Plaintiff. QVC's customer would then purchase the boards from QVC and then the Defendant would ship the boards directly to QVC's customer.

Lu Decl. Page 3, ¶ 12-14, lns 12-19. The entirety of the "arrangement" or agreement between the parties is contained in the Declaration of Eric Lu. What Plaintiff acknowledged is the sale of hoverboards and the inability to drop ship. Plaintiff never acknowledged an exclusivity agreement.

      The March 1, 2017 Email is similarly hopeless for Defendant. The entirety of the email says

> I gave you guys 60days on the lower cost which I have to carry the AR and if you're going to paid 99k, that is not acceptable, I could have sold those inventory to other accounts. Janet had requested that I work with you guy and in good faith, I gave you QVC and Zullilly...I have tried to work with you guys, but I feel like I'm getting the short end of the stick...
> Please ship all goods back to me...as I cannot tie up my funds and wait for weekly reports/payments.
> I need to know how many units you have now and I will have my team schedule the pick up immediately.
> Eric

(sic). What we have is a desperate plea to bring an account forward. Nothing in this email admits an exclusivity agreement or arrangement. To be clear, the only individual who has acknowledged an exclusivity agreement here is Charlie

Tebele. Tebele Transcript, p. 39, ¶¶ 6-13; Opp. Pg. 13, lns 10-14. Plaintiff never acknowledged an exclusivity agreement, and Defendant's statements cannot unilaterally bring them within the purview of § 2201.

### 3.   DEFENDANT CANNOT SHOW A BASIS FOR PROMISSORY ESTOPPEL.

As a last gasp effort, Defendant attempts to throw in an argument that promissory estoppel should uphold the alleged exclusivity agreement. Again, Defendant's own words destroy any chance it has at success.

The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." US Ecology, Inc. v. State of California (2005) 129 Cal. App. 4th 887, 901. Estoppel applies "where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute." In re Baglione's Estate (1966) 65 Cal. 2d 192, 197–98.

### a)   DEFENDANT CANNOT SHOW UNCONSCIONABLE INJURY.

As a preliminary matter, estoppel does not apply in this situation as Defendant has not shown a serious change of position in reliance on the contract and has not shown unjust enrichment. Nor will it be able to. Defendant bases its claims of unconscionable injury on the fact that they allegedly could not fill the 2016 QVC orders. Opp. Pg. 15 lns 15-17. QVC has testified that Digital Gadgets hoverboards were sold well beyond June, 2016 and were sold until they were sold out. Deposition of Meghan Kane, Page 31, Lines 4-24 through Page 32, Lines 1-

- 19

5. Charlie Tebele, on the other hand, testified that they stopped selling hoverboards to QVC in June, 2016. Declaration of Charlie Tebele, ¶ 41.

Either scenario precludes promissory estoppel. If QVC is telling the truth and Charlie Tebele is lying, Digital Gadgets received a large amount of money and sold hoverboards throughout 2016. On the other hand, if, as the Defendant would have you believe, Charlie Tebele is telling the truth and QVC is lying and manufacturing spreadsheets evidencing the sales of Digital Gadgets products, then Digital Gadgets is still in possession of over a million dollars' worth of hoverboards. More to the point, there is no way of showing that Plaintiff has been unjustly enriched – Plaintiff has lost goods and received no consideration whatsoever in return. Defendant cannot show unconscionable injury under any circumstance.

*b)*    *NO CLEAR AND UNAMBIGUOUS PROMISE EXISTS CONCERNING AN EXCLUSIVITY AGREEMENT.*

Further, there was no clear and unambiguous promise that Defendant was to fill the shoes of Plaintiff as the exclusive seller of hoverboards. Defendant testified that there was a "certain agreement" between the two. When was that agreement made? Where? Was it in writing? Do any emails confirm the existence? If they do, Defendant has not poitned to their existence. To that same effect, Plaintiff has denied the very existence of *any* exclusivity agreement.

**E.**    **DEFENDANT HAS SHOWN NO BASIS FOR ENTITLEMENT TO OFFSET.**

Plaintiff set forth arguments showing that Defendant is not entitled to offset because (1) the amounts sought had not yet matured, and (2) Defendant failed to give notice pursuant to Cal. Com. Code § 2607(3). Without addressing any of Plaintiff's actual arguments, Defendant makes the conclusory statement that Defendant is entitled to offset. Defendant has done absolutely nothing to counter these arguments. The question remains – what offset is Defendant

1    entitled to? No amounts have been shown to be losses, and no notice was given

2    pursuant to Cal. Com. Code 2607(3). Accordingly, there is no ability for

3    Defendant to obtain offset.

4      **F.**   <u>**DEFENDANT HAS NO EXCUSES FOR FAILING TO**</u>

5      <u>**COMPLY WITH THE COMMERCIAL CODE AND IS BARRED**</u>

6      <u>**FROM RECOVERY BECAUSE DEFENDANT ACCEPTED THE**</u>

7      <u>**GOODS.**</u>

8      Perhaps most relevant, Defendant fails to address the most crucial part of

9    the law. As set forth at length in Plaintiff's Memorandum, a buyer must pay at

10   the contract rate for any goods accepted. Cal. Com. Code § 2301. Defendant

11   failed to reject the goods, the Defendant resold the goods, and the Plaintiff never

12   revoked its acceptance. Nowhere in its Opposition does Defendant deny those

13   allegations. Accordingly, the goods have been accepted, and Defendant is liable

14   for the contract rate.

15   **III.**   <u>***CONCLUSION***</u>

16     For the reasons set forth above, Summary Judgment must be entered in

17   Plaintiff's favor.

18   Date: December 26, 2018      By:   /s/ Joseph M. Liu, Esq.

19                Joseph M. Liu, Esq.

20                Attorneys for Plaintiff/

               Counter Defendant

               Interworks Unlimited, Inc.