# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| EDWARD M. WOLKOWITZ, solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Interworks Unlimited Inc.<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL GADGETS, LLC,<br><br>Defendant. | CV 17-04983 TJH (KSx)<br><br>Findings of Fact,<br><br>Conclusions of Law<br><br>and<br><br>Order |

    The Court has considered Defendant Digital Gadgets, LLC's ["Digital Gadgets"] motion to dismiss for lack of subject matter jurisdiction, together with the moving and opposing papers.

    Because there were conflicting facts as to whether Interworks Unlimited Inc. ["Interworks"] had standing to pursue this action, the Court ordered an evidentiary hearing pursuant to *Rosales v. United States*, 842 F.2d 799, 803 (9th Cir. 1987). Thereafter, Interworks filed bankruptcy and Edward M. Wolkovitz was appointed as trustee of the bankruptcy estate of Interworks.

    On August 23, 2022, the Court conducted an evidentiary hearing on the issue of

whether Interworks had standing to maintain this lawsuit against Digital Gadgets.

The Court, having considered the various briefs submitted by the parties, and having heard the evidence presented by the parties, now, issues the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. On August 14, 2012, Interworks and Bibby Financial Services, Inc. entered into a factoring agreement, entitled "Master Purchase and Sale Agreement" ["the Factoring Agreement"].

2. Pursuant to § 8.1 of the Factoring Agreement, it is governed by California law.

3. Pursuant to § 1.1 of the Factoring Agreement, Interworks granted Bibby the option to purchase Interworks's existing and future accounts receivables.

4. Pursuant to Annex A of the Standard Provisions Definitions of the Factoring Agreement, "'Accounts Purchased' shall mean all Accounts that are offered for sale to [Bibby] regardless of whether an Advance is made against such Account."

5. Pursuant to § 7.6 of the Factoring Agreement, "[Bibby], as the sole and absolute owner of the Accounts, shall have the sole and exclusive power and authority to collect each such Account, through legal action or otherwise[.]"

6. Between December 28, 2016, and January 4, 2017, Interworks issued invoices to Digital Gadgets relating to Interworks's sale of hoverboards to Digital Gadgets ["the Invoices"].

7. Bibby did not purchase the Invoices. Consequently, Interworks did not assign to Bibby the authority to collect the Invoices through legal action.

8. On January 12, 2017, Interworks and Cash Capital Group, LLC ["CCG"] entered into an agreement entitled "Agreement for the Purchase and Sale of Future Receipts" ["the CCG Agreement"].

9. The CCG Agreement did not set forth which state's law would govern. However, no party disputed that California law applied to the CCG Agreement.

10. The CCG Agreement provided that Interworks "sells, assigns and transfers … the Specified Percentage of the proceeds of each future sale made by Seller ['Future Receipts'] until the Seller has received the Purchased Amount."

11. The CCG Agreement defined Specified Percentage as 18 percent.

12. Pursuant to § 3 of the CCG Agreement, the Specified Percentage became 100 percent if Interworks defaulted.

13. Pursuant to § 5 of the CCG Agreement, Interworks appointed CCG as its agent and attorney-in-fact, with full authority to take any action to settle Interworks's obligations, including to collect the Future Receipts and to institute any proceeding necessary to collect any of the remaining Purchased Amount.

14. Pursuant to § 16.7 of the CCG Agreement, Interworks granted CCG a security interest in the Future Receipts, including the ability to enforce its rights as a secured party under the Uniform Commercial Code if Interworks defaulted.

15. On July 7, 2017, Interworks filed this case.

16. As of the date this case was filed, the Invoices totaled $929,280.00 and the Purchased Amount totaled $424,703.09, and CCG was entitled to enforce Digital Gadgets's payment obligations under the Invoices, if such an obligation existed, but only up to the portion of the Purchased Amount to which it was entitled under the CCG Agreement.

17. Upon Interworks's assignment to CCG of the right to recover any amounts due under any of the Invoices, CCG, not Interworks, became the real party in interest.

18. On June 10, 2017, CCG notified Digital Gadgets that Interworks "is in default under the terms of the [CCG] Agreement and that Digital Gadgets is "directed by The Rubin Law Firm c/o CCG (acting as [Interworks's] attorney-in-fact) to hold in trust all funds that would otherwise be paid to [Interworks]."

19. Regardless of Interworks's default, CCG never had an interest in the entire amount of all of the Invoices. Because CCG never had the right to recover the entire amount due under all of the Invoices, some of the Invoices may not have been

recoverable by CCG.

20. In July, 2018, Interworks satisfied its financial obligations to CCG under the CCG Agreement and, therefore, Interworks became, and is, currently, the real party in interest, here.

21. Interworks had Article III standing when it filed this case, though it was not the real party in interest.

22. Interworks, through its bankruptcy trustee, presently, has Article III standing.

23. Any Finding of Fact erroneously categorized below as a Conclusion of Law is hereby incorporated into these Findings of Fact.

## CONCLUSIONS OF LAW

1. A suit brought by a plaintiff who lacks Article III standing is not a "case or controversy," and must be dismissed. *Cetacean Cmty v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

2. To satisfy Article III standing, Interworks must have suffered a concrete, particularized injury; there must be a causal connection between the injury and Digital Gadgets's conduct; and the injury must be likely to be redressed by a favorable litigation outcome. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

3. A litigant invoking the jurisdiction of the Court must have standing not only at the time of the commencement of the litigation but throughout all stages of litigation. *See Davis v. Federal Election Com'n*, 554 U.S. 724, 733 (2008).

4. The failure to bring suit as the real party in interest is not a defect of Article III standing, and can be cured by the substitution of the actual real party in interest. *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).

5. Pursuant to Fed. R. Civ. Proc. 17(a), suits in federal court must be maintained by the real party in interest, *i.e.*, the party that possesses the legal right to sue. *Dunmore*.

6. In a diversity case, the real party in interest is determined by state law.

*Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093-94 (9th Cir. 2004).

7. If the assignment of a security interest results in the assignment of the right to enforce a debt, the assignee becomes the real party in interest in any suit to enforce the debt, even if the assignee obtained only a partial interest. *See Greco v. Oregon Mut. Fire Ins. Co.*, 191 Cal. App. 2d 674, 687 (1961).

8. Under California law, the rights of a secured party include the right to enforce the obligation of the account debtor. Cal. Com. Code § 9607(a).

9. An assignment of the right to sue does not take away the assignor's Article III standing. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 380 (2d Cir. 2021) (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286-87 (2008)).

10. Any Conclusion of Law erroneously categorized above as a Finding of Fact is hereby incorporated into these Conclusions of Law.

Accordingly,

𝕴𝖙 𝖎𝖘 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that Digital Gadgets motion to dismiss for lack of subject matter jurisdiction be, and hereby is, 𝕯𝖊𝖓𝖎𝖊𝖉.

Date: December 19, 2022

Terry J. Hatter, Jr.
Senior United States District Judge